FILED BY YH D.C.

Sep 8, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

FILED
CLERK, U.S. DISTRICT COURT
09/01/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: GSA DEPUTY

**FLSD CASE#26-MJ-6517-SHAW-WILDER**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2026 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>SHILOH LUCKEY,<br>aka "Shiloh Johnson,"<br>Defendant. | CR 2:26-cr-00563-ODW<br>I N D I C T M E N T<br>[15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5: Securities Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1344(1): Bank Fraud; 18 U.S.C. § 1957: Money Laundering; 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2); 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH NINE

[15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. Defendant SHILOH LUCKEY, also known as "Shiloh Johnson," was a resident of Inglewood, California.

2. Defendant LUCKEY founded ComplYant App, Inc. ("ComplYant") in 2019. ComplYant was a tax compliance startup company that offered services to small businesses to help them navigate complex tax

regulations in exchange for a monthly subscription fee. ComplYant was a Delaware corporation with its principal place of business in Los Angeles, California. Defendant LUCKEY was the Chief Executive Officer of ComplYant and exerted managerial control over ComplYant.

3. Defendant LUCKEY raised investment funds for ComplYant through stock purchase agreements, convertible equity agreements, and simple agreements for future equity. The common stock issued by ComplYant and each of these three forms of investment constituted "securities" under the Securities Exchange Act of 1934.

4. Defendant LUCKEY exercised sole control over multiple bank accounts in the name of ComplYant, including the following bank accounts (collectively, the "ComplYant Accounts"):

a. A checking account ending in 7364 at First Republic Bank (the "ComplYant First Republic Account");

b. A checking account ending in 9906 at Silicon Valley Bank (the "ComplYant Silicon Valley 9906 Account"); and

c. A checking account ending in 8290 at Silicon Valley Bank (the "ComplYant Silicon Valley 8290 Account").

B. THE SCHEME TO DEFRAUD

5. Beginning no later than in or around September 2020, and continuing through at least in or around September 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant LUCKEY, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and the mails, in connection with the purchase and sale of ComplYant securities, used and employed manipulative and deceptive devices and contrivances by: (1) employing a scheme to defraud; (2) making untrue statements of material facts and omitting

to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers and prospective purchasers of ComplYant securities (the "victim-investors"), by causing materially false and fraudulent statements and material omissions to be made to the victim-investors about ComplYant's revenue, cash holdings, and subscriptions, as well as defendant LUCKEY's background.

6. The scheme to defraud operated, in substance, as follows:

a. Defendant LUCKEY promoted ComplYant as a startup software company with existing customers and a revenue stream. To persuade victim-investors to purchase ComplYant common stock and other securities, defendant LUCKEY presented them with pitch decks, investor materials, and updates that falsely inflated ComplYant's revenue, customer base, subscriptions, and cash reserve balances.

b. To induce victim-investors to purchase ComplYant securities, defendant LUCKEY represented herself, both directly and in investing materials she provided to victim-investors, as a licensed Certified Public Accountant ("CPA") with deep expertise in tax management, accounting, and compliance, when as defendant LUCKEY then knew, she was not then and never had been a licensed CPA. Defendant LUCKEY falsely represented herself as a CPA to victim-investors to bolster her false representations and pretenses regarding her business acumen, the integrity and reliability of ComplYant's financials and metrics, and ComplYant's potential success as a startup.

c. To further induce victim-investors to purchase ComplYant securities, defendant LUCKEY also distributed investor update emails, profit and loss statements, and other financial metrics that substantially and falsely inflated ComplYant's revenue and cash balances, among other misrepresentations.

d. Relying on these false statements, pretenses, and misrepresentations, victim-investors purchased ComplYant securities by depositing fundings into ComplYant's Accounts.

e. Defendant LUCKEY used victim-investor funds raised from the sale of ComplYant securities to pay for personal expenses, including, among other expenses, the purchase of a Tesla, the purchase of her residence, and her wedding in Anguilla.

7. In executing this fraudulent scheme, defendant LUCKEY, operating through ComplYant, fraudulently obtained at least $13.3 million from multiple victim-investors and caused them to lose the entire amount of their investments.

C. <u>EXECUTION OF THE FRAUDULENT SCHEME</u>

8. On or about the dates set forth below, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, and in furtherance of the manipulative and deceptive devices described above, defendant LUCKEY directly and indirectly caused the following uses of a means and instrumentality of interstate commerce in connection with the purchase and sale of securities:

//

//

//

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| ONE | 11/12/2020 | Wire Transfer of $150,000 from Venture Capital Fund 1 to the ComplYant Silicon Valley 8290 Account to purchase securities in ComplYant. |
| TWO | 7/30/2021 | Investor Update Email for July 2021 sent by defendant LUCKEY that falsely represented that ComplYant had current monthly recurring revenue of $28,414. |
| THREE | 12/17/2021 | Wire Transfer of $50,001 from Investor 1 to the ComplYant Silicon Valley 8290 Account to purchase securities in ComplYant. |
| FOUR | 1/7/2022 | Investor Update Email for January 2022 sent by defendant LUCKEY that falsely represented that ComplYant had new monthly recurring revenue of $6,000, total monthly recurring revenue of $88,000, and a bank balance of $4,028,018. |
| FIVE | 8/9/2022 | Investor Update Email for July 2022 sent by defendant LUCKEY that falsely represented that ComplYant had new monthly recurring revenue of $9,000, total monthly recurring revenue of $201,473, and a bank balance of $3,027,701. |
| SIX | 10/11/2022 | Wire Transfer of $922,922.66 from Venture Capital Fund 1 to the ComplYant Silicon Valley 8290 Account to purchase securities in ComplYant. |
| SEVEN | 10/12/2022 | Wire Transfer of $1,000,000 from Venture Capital Fund 2 to the ComplYant Silicon Valley 8290 Account to purchase securities in ComplYant. |
| EIGHT | 10/12/2022 | Wire Transfer of $2,500,000 from Venture Capital Fund 3 to the ComplYant Silicon Valley 8290 Account to purchase securities in ComplYant. |
| NINE | 10/31/2022 | Wire Transfer of $2,900,000 from Venture Capital Fund 4 to the ComplYant Silicon Valley 8290 Account to purchase securities in ComplYant. |

COUNTS TEN THROUGH TWELVE

[18 U.S.C. § 1343]

9. The Grand Jury realleges paragraphs 1 through 4, 6, and 7 of this Indictment here.

A. THE SCHEME TO DEFRAUD

10. Beginning no later than in or around September 2020, and continuing through at least in or around September 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant SHILOH LUCKEY, also known as "Shiloh Johnson," knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud victim-investors as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, promises, and the concealment of material facts.

11. The scheme to defraud operated, in substance, as described in paragraphs 6 and 7 of this Indictment.

B. USE OF INTERSTATE WIRES

12. On or about the dates set forth below, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendant LUCKEY transmitted and caused the transmission of the following items by means of wire communication in interstate commerce:

//

//

//

| COUNT | DATE | INTERSTATE WIRING |
|---|---|---|
| TEN | 12/17/2021 | Wire Transfer through the Fedwire Funds Service of $50,001 from Investor 1 to the ComplYant Silicon Valley 8290 Account, which was transmitted through FedWire servers in New Jersey and Texas. |
| ELEVEN | 10/12/2022 | Wire Transfer through the Fedwire Funds Service of $1,324,291.39 from the ComplYant Silicon Valley 8290 Account to the ComplYant First Republic Account, which was transmitted through FedWire servers in New Jersey and Texas. |
| TWELVE | 10/31/2022 | Wire Transfer through the Fedwire Funds Service of $2,900,000 from Venture Capital Fund 4 to the ComplYant Silicon Valley 8290 Account, which was transmitted through FedWire servers in New Jersey and Texas. |

COUNT THIRTEEN

[18 U.S.C. §§ 1344(1), 2(b)]

13. The Grand Jury realleges paragraphs 1 through 4, 6, and 7 of this Indictment here.

A. THE SCHEME TO DEFRAUD

14. Beginning no later than on or about September 21, 2022, and continuing through at least on or about October 12, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant SHILOH LUCKEY, also known as "Shiloh Johnson," knowingly and with intent to defraud, executed a scheme to defraud First Republic Bank, a federally insured financial institution, as to material matters.

15. The fraudulent scheme operated, in substance, as follows:

a. Defendant LUCKEY wrote a check in the amount of $1,500,000 from the ComplYant First Republic Account (the "First Republic Check"), despite knowing there were insufficient funds in the account to negotiate the check.

b. Defendant LUCKEY deposited the First Republic Check into the ComplYant Silicon Valley 9906 Account, causing Silicon Valley Bank to credit the account in the amount of $1,500,000.

c. Defendant LUCKEY wrote a check in the amount of $1,500,000 made payable to ComplYant from her personal checking account at Alliant Bank ending in 3664 (the "Alliant Check"), despite knowing she had insufficient funds in her account to negotiate the check.

d. Defendant LUCKEY deposited the Alliant Check into the ComplYant First Republic Account, causing First Republic Bank to credit the account in the amount of $1,500,000.

e. Defendant LUCKEY requested an increase in the outgoing wire limit for the ComplYant First Republic Account and falsely represented to First Republic Bank that she needed the increase in the outgoing wire limit for the business purpose of a commercial property purchase.

f. Knowing that there would be a delay before First Republic Bank determined that the Alliant Check was an insufficient funds check, and relying on the increased outgoing wire limit she had fraudulently obtained, defendant LUCKEY wired and caused to be wired $1,111,447.66 from the ComplYant First Republic Account to First American Title Company for the purchase of defendant LUCKEY's residence. As a result of this wire, when First Republic Bank reversed the deposit of the Alliant Check for insufficient funds, the ComplYant First Republic Bank account had a negative balance of $1,325,612.99, i.e., was overdrawn by that amount.

g. Defendant LUCKEY then paid off the negative balance in the ComplYant First Republic Account caused by the outgoing wire for the purchase of her residence by transferring and causing to be transferred $1,324,291.39 in ComplYant investor funds from the ComplYant Silicon Valley 8290 Account to the ComplYant First Republic Account.

B. EXECUTION OF THE SCHEME TO DEFRAUD

16. On or about September 30, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant LUCKEY executed the fraudulent scheme described above by wiring and willfully causing others to wire transfer $1,111,447.66 from the ComplYant First Republic Bank Account to First American Title Company for the purchase of defendant LUCKEY's residence.

COUNTS FOURTEEN AND FIFTEEN

[18 U.S.C. §§ 1957, 2(b)]

17. The Grand Jury realleges paragraphs 1 through 4, 6, and 7 of this Indictment here.

18. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant SHILOH LUCKEY, also known as "Shiloh Johnson," knowing that the property involved represented the proceeds of some form of unlawful activity, knowingly engaged in, and willfully caused others to knowingly engage in, the following monetary transactions in criminally derived property of a value greater than $10,000, which property in fact was derived from the proceeds of specified unlawful activity as alleged in the counts specified below of this Indictment:

| **COUNT** | **DATE** | **TRANSACTION** |
|---|---|---|
| FOURTEEN | 9/30/2022 | Wire transfer of $1,111,447.66 from the ComplYant First Republic Account to First American Title Company, the property involved having been derived from specified unlawful activity, namely, bank fraud, in violation of Title 18, United States Code, Section 1344(1), as alleged in Count Thirteen of this Indictment. |
| FIFTEEN | 10/12/2022 | Wire transfer of $1,324,291.39 from the ComplYant Silicon Valley 8290 Account to the ComplYant First Republic Account, the property involved having been derived from specified unlawful activity, namely, securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5, as alleged in Counts Six through Eight of this Indictment. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

19. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Twelve of this Indictment.

20. The defendant, if so convicted, shall forfeit to the United States of America the following:

a. All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense, including but not limited to, the real property located at 752 Daniel Freeman Circle in Inglewood, California with Assessor's Parecel Number 4015-024-242; and

b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

21. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982(a)(2)]

22. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of the defendant’s conviction of the offense set forth in Count Thirteen of this Indictment.

23. The defendant, if so convicted, shall forfeit to the United States of America the following:

a. Any property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense, including but not limited to, the real property located at 752 Daniel Freeman Circle in Inglewood, California with Assessor’s Parecel Number 4015-024-242; and

b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

24. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982(a)(1)]

25. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offenses set forth in either of Counts Fourteen or Fifteen of this Indictment.

26. The defendant, if so convicted, shall forfeit to the United States of America the following:

a. Any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to, the real property located at 752 Daniel Freeman Circle in Inglewood, California with Assessor's Parecel Number 4015-024-242; and

b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

27. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be

divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve-month period.

A TRUE BILL

/S/
Foreperson

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney & Chief, Criminal Division

ROGER A. HSIEH
Assistant United States Attorney
Chief, Major Frauds Section

ANDREW M. ROACH
Assistant United States Attorney
Acting Deputy Chief, Major Frauds Section

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>PLAINTIFF,<br>v.<br>SHILOH LUCKEY,<br>aka "Shiloh Johnson,"<br>DEFENDANT(S) | CASE NUMBER:<br>2:26-cr-00563-ODW<br><br>**WARRANT FOR ARREST** |

To: UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **SHILOH LUCKEY, aka Shiloh Johnson,** and bring her forthwith to the nearest Magistrate Judge to answer an Indictment charging her with Securities Fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5; Wire Fraud, in violation of18 U.S.C. § 1343; Bank Fraud, in violation of 18 U.S.C. § 1344(1); and Money Laundering, in violation of § 1957(a).

Brian Karth
NAME OF ISSUING OFFICER

Clerk of Court
TITLE OF ISSUING OFFICER

SIGNATURE OF DEPUTY CLERK

September 1, 2026 Los Angeles, CA
DATE AND LOCATION OF ISSUANCE

By: MARGO A. ROCCONI
NAME OF JUDICIAL OFFICER

**RETURN**

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION)

DATE RECEIVED

NAME OF ARRESTING OFFICER

DATE OF ARREST

TITLE

**DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO**

SIGNATURE OF ARRESTING OFFICER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>PLAINTIFF,<br>v.<br>SHILOH LUCKEY,<br>aka "Shiloh Johnson,"<br>DEFENDANT(S) | CASE NUMBER:<br><br>**WARRANT FOR ARREST** |

## ADDITIONAL DEFENDANT INFORMATION

| RACE: | SEX: | HEIGHT: | WEIGHT: | HAIR: | EYES: | OTHER: |
|---|---|---|---|---|---|---|

| YEAR OF BIRTH: | PLACE OF BIRTH: | SOCIAL SECURITY NO.: | DRIVER'S LICENSE NO. | ISSUING STATE |
|---|---|---|---|---|
| 1984 | | | | |

| ALIASES: | SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS: |
|---|---|

| AUTO YEAR: | AUTO MAKE: | AUTO MODEL: | AUTO COLOR: | AUTO LICENSE NO.: | ISSUING STATE |
|---|---|---|---|---|---|

| LAST KNOWN RESIDENCE: | LAST KNOWN EMPLOYMENT: |
|---|---|

| FBI NUMBER: |
|---|

| ADDITIONAL INFORMATION: |
|---|

| INVESTIGATIVE AGENCY NAME: | INVESTIGATIVE AGENCY ADDRESS: |
|---|---|
| FBI | |

NOTES: